[No. B197611. Second Dist., Div. Eight. Aug. 25, 2008.]

ASSOCIATION FOR LOS ANGELES DEPUTY SHERIFFS, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Green & Shinee, Richard A. Shinee and Helen L. Schwab for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, Christopher Keosian, Deputy County Counsel; Liebert Cassidy Whitmore, Richard M. Kreisler and Max S. Sank for Defendants and Respondents.

**OPINION**

**BIGELOW, J.**—The Los Angeles County Sheriff's Department (Department) revised its Manual of Policy and Procedures to include this language: "[P]rior to being interviewed by assigned Departmental investigators. . . . Members [of the Department] who were either involved in or witnessed [a deputy-involved shooting] may consult individually with legal counsel or labor representatives . . . [but] . . . shall not consult with legal counsel and or labor representatives *collectively or in groups* (e.g., two or more members consulting at the same time with the same legal counsel/labor representative)."[1] (Italics added.) The Association for Los Angeles Deputy Sheriffs (ALADS) filed the current action to enjoin the Department from implementing its anti-huddling policy revision. The trial court denied ALADS's motion for a preliminary injunction. The issue before us on this appeal is whether the trial court abused its discretion by denying ALADS's motion for a preliminary injunction. We affirm the trial court's order.

**FACTS**

I. *The Memorandum of Understanding*

ALADS is the certified representative for the Department's nonsupervisory deputies, also known as "Bargaining Unit 611." On a date not clear from the record, ALADS and the Department entered a collective bargaining agree-

---

[1] The parties and the trial court used the terms "huddling" and "anti-huddling" to describe the conduct that is affected by the Department's policy revision. For want of better terms, we adopt these terms as well.

ment known as the "2000–2003 Unit 611 Salary Memorandum of Understanding" (the MOU). The terms and conditions of employment under which the Department's deputies perform their duties are governed by the parties' MOU, the Meyers-Milias-Brown Act or "MMBA" (Gov. Code, § 3500 et seq.), the Public Safety Officers Procedural Bill of Rights Act or "POBR" (Gov. Code, § 3300 et seq.), and the employee relations ordinance of the county of Los Angeles (L.A. County Code, tit. 5, ch. 5.04).[2]

The record before us on appeal does not include a copy of the parties' MOU or any parts of the MOU. ALADS, however, alleges that the MOU includes unwritten terms and conditions of employment under which the Department's deputies perform their duties. ALADS alleges that these unwritten terms and conditions of employment have become part of the parties' MOU because they are "consistent and established practices" which have been "applied to [the Department's deputies] for over 25 years."

ALADS specifically alleges that the parties' MOU includes an unwritten term and condition of employment to the following effect: "[W]hen there are deputies involved in a shooting and the deputies request representation during a Department . . . investigation into the shooting incident, deputies who either were shooters in the incident and/or witnessed the shooting [shall be entitled to] consult with legal counsel and/or labor representatives collectively and in a group (i.e., two or more deputies consulting at the same time with the same legal counsel/labor representative)."

## II. *The Sheriff's Department Proposed Policy Revisions*

In June 2006, the Department notified ALADS of a proposed series of revisions to the Department's Manual of Policy and Procedures governing deputy-involved shootings. Section 5-09/431.00 of the proposed policy revisions explained the basic reasons for the new policies governing deputy-involved shootings: "The use of deadly force by law enforcement personnel is an appropriate and necessary action when confronted by a deadly threat to members [of the Department] and/or third parties. While Department members have a well-established record of making appropriate decisions regarding the application of deadly force, the magnitude of such decisions demands they be closely and objectively reviewed. One critical component of this process is the gathering of facts from every available witness. That fact-gathering process must be undertaken promptly and with investigatory integrity. At the same time, the investigatory process must honor the rights and consider the needs of all persons. This policy is intended to ensure the

---

[2] All further statutory references are to the Government Code.

objectivity and integrity of the fact-finding process while honoring the rights and needs of Department members."

As originally drafted, proposed policy revision section 5-09/431.50 provided: "Involved personnel will be interviewed by Homicide Bureau investigators about the shooting incident when the shooting results in death or injury to a person. . . . In non-hit shootings, involved personnel shall be interviewed by [Internal Affairs Bureau (IAB)] investigators. Upon request, involved personnel . . . may consult individually with legal counsel telephonically or in person before providing interviews to Homicide Bureau or IAB investigators."

In July, August and September 2006, representatives from ALADS and the Department discussed the Department's proposed policy revisions governing investigations of deputy-involved shootings. On September 29, 2006, ALADS filed a "Notice of Impasse" with the Los Angeles County Employee Relations Commission, requesting the appointment of a mediator to oversee further negotiations. On October 10, 2006, the Department advised ALADS by letter that, notwithstanding any further negotiations over its policy revisions, the Department would, effective November 1, 2006, implement its proposed policy revisions governing investigations of deputy-involved shootings.

On November 1, 2006, the Department redrafted policy revision section 5-09/431.50, so that it now provides:

"Deputy-involved shootings are likely the most critical incidents in which Department personnel become involved; therefore, they appropriately warrant an in-depth and objective analysis. A central component in this process is the collection of statements from every identifiable witness. The investigative process must be undertaken promptly and with the highest level of investigatory integrity, while at the same time, honoring the rights and needs of Department members.

"The following investigative protocols have been established by the Department in order to ensure these objectives:

"Personnel, either involved in, or a witness to, the event, shall not discuss the circumstances of the incident among themselves or with uninvolved persons prior to being interviewed by assigned Department investigators. . . .

"Members who were either involved in or witnessed the incident may consult individually with legal counsel or labor representatives telephonically

or in person before providing an interview with Department investigators. Members who were either involved in or witnessed the incident shall not consult with legal counsel and or labor representatives collectively or in groups (e.g., two or more members consulting at the same time with the same legal counsel/labor representative) . . . ."[3]

### III. *Procedural History of ALADS's Complaint for Injunctive Relief*

On November 14, 2006, ALADS filed a verified complaint against the Department, seeking a temporary restraining order, and preliminary and permanent injunctions to preclude the Department from implementing policy revision section 5-09/431.50 to the extent that it precludes members of the Department from consulting with legal counsel and/or labor representatives "collectively or in groups." ALADS's complaint alleges three causes of action in support of injunctive relief: (1) the Department's anti-huddling policy revision violates the MMBA; (2) the Department's anti-huddling policy revision violates the POBR; and (3) the Department's anti-huddling policy revision violates the constitutional right to consult with counsel guaranteed to its deputies under the federal and state Constitutions.

In support of its request for injunctive relief, ALADS submitted declarations from John Rees (ALADS's executive director), Helen Schwab (an attorney with the law firm of Green & Shinee, which represents ALADS members in connection with investigations arising from deputy-involved shooting incidents), Richard Shinee (same), and Elizabeth Gibbons (same). In opposition to ALADS's motion for a preliminary injunction, the Department filed extensive objections to the declarations submitted by ALADS. The record on appeal does not reflect any evidence submitted by the Department in opposition to ALADS's motion for a preliminary injunction. The effective thrust of the Department's opposition to the issuance of a preliminary injunction rested on the position that its anti-huddling policy revision was, on its face, a valid workplace regulation.

The trial court issued an order to show cause, and set a hearing on ALADS's motion for a preliminary injunction. On December 21, 2006, the trial court heard arguments, and took the matter under submission. On December 29, 2006, the trial court entered a minute order denying ALADS's motion for a preliminary injunction.

On January 12, 2007, ALADS filed a motion for reconsideration. On March 1, 2007, the trial court entered an order denying ALADS's motion for

[3] Our references to the Department include the County of Los Angeles, and Leroy Baca, the Sheriff of Los Angeles County.

reconsideration, expressly finding that ALADS had failed to "present[] new or different facts, circumstances, or law which was unknown or unavailable to [ALADS] at the time of the [original preliminary injunction] hearing."

ALADS filed a timely notice of appeal.

## IV. *The Policy Language*

ALADS has expressed concern that the trial court's minute order denying its motion for a preliminary injunction includes language which suggests that the Department's anti-huddling policy revision not only prohibits deputies from meeting in a group with one lawyer, but also prohibits deputies from consulting separately with more than one lawyer from the same law firm. In other words, ALADS contends, there is some language in the trial court's order which suggests that there can be only one lawyer from one law firm in the initial stages of an investigation into a deputy-involved shooting.

We do not find such language in the trial court's order. Further, we agree with ALADS that the language of the Department's anti-huddling policy does not state that, in connection with a shooting incident, a lawyer may only represent a single deputy, and that only one lawyer from any given law firm may be involved in the initial investigation. The Department's policy revision only prohibits a group of deputies from meeting with the same lawyer at the same time. We see no language in the Department's anti-huddling policy revision which prevents the same lawyer, or different lawyers from the same law firm, from meeting individually with many different deputies.

We agree with ALADS, and advise the Department that multiple deputies may consult with the same lawyer (in individual sessions) or with different lawyers from the same law firm.

## DISCUSSION

## I. *The Appeal Is Dismissed to the Extent It Challenges the Motion for Reconsideration*

■ Before turning to ALADS's substantive arguments on appeal, we address the Department's jurisdictional contention that we must dismiss part of ALADS's appeal. According to the Department, we do not have jurisdiction to consider ALADS's appeal to the extent it challenges the trial court's order denying its motion for reconsideration. We lack jurisdiction, argues the

Department, because an order denying a motion for reconsideration is not an appealable order. We agree.

In *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473 [121 Cal.Rptr. 477, 535 P.2d 341], the Supreme Court suggested without discussion that an order denying a motion for reconsideration is appealable when the motion raised new facts or law. (*Id.* at p. 477, fn. 2, citing *Farrar v. McCormick* (1972) 25 Cal.App.3d 701, 705–706 [102 Cal.Rptr. 190].) The unspoken but implicit reasoning of *Freeman* is that, where a motion for reconsideration presents new facts or law, the new facts or law cannot otherwise be reviewed on the appeal from the underlying order. In the years after *Freeman*, a handful of appellate courts have followed its lead. (See, e.g., *Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 710–711 [269 Cal.Rptr. 605].)

More recently, however, the prevailing view among our appellate courts has been that an order denying a motion for reconsideration is not an appealable order under any circumstances. (See, e.g., *Rojes v. Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160–1161 [250 Cal.Rptr. 435]; *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 769 [57 Cal.Rptr.2d 818] [an order denying a motion for reconsideration is never appealable regardless of whether new facts were raised]; *In re Marriage of Burgard* (1999) 72 Cal.App.4th 74, 81 [84 Cal.Rptr.2d 739]; *Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242 [87 Cal.Rptr.2d 346]; *Annette F. v. Sharon S.* (2005) 130 Cal.App.4th 1448, 1457–1459 [30 Cal.Rptr.3d 914] [acknowledging a "split of authority" but observing that the prevailing view among appellate courts is that a denial of a motion for reconsideration is never appealable under any circumstances].)

We have previously adhered to the prevailing view in an unrelated nonpublished opinion, and see no reason to reach a different conclusion in the current case. Moreover, the trial court in the current case expressly found that ALADS had failed to present any material new facts in support of its motion for reconsideration, and we agree with the trial court's assessment. Thus, even under the broader view that an order denying a motion for reconsideration is appealable when new facts or law have been presented, we would still decline to address ALADS's claims of error connected with its motion for reconsideration.[4]

---

[4] California Rules of Court, rule 8.108(e) provides: "If any party serves and files a valid motion to reconsider an appealable order . . . , *the time to appeal* from that order is extended [for specified lengths of time]." (Italics added.) The Advisory Committee Comment to California Rules of Court, rule 8.108(e) acknowledges the split of authority on whether an order denying a motion to reconsider is itself appealable, and "takes no position" on the issue, expressing the view that this is a "legislative matter[]".)

## II. *The Trial Court Properly Denied the Preliminary Injunction*

### *Applicable Law*

■ A trial court's decision on a motion for a preliminary injunction " 'does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the right claimed by him [or her].' . . . The general purpose of such an injunction is the preservation of the status quo until a final determination of the merits of the action. . . . Thus, the court examines all of the material before it in order to consider 'whether a greater injury will result to the defendant from granting the injunction than to the plaintiff from refusing it . . . .' . . . In making that determination the court will consider the probability of the plaintiff's ultimately prevailing in the case and, it has been said, will deny a preliminary injunction unless there is a reasonable probability that plaintiff will be successful in the assertion of his rights. . . . 'In the last analysis the trial court must determine which party is the more likely to be injured by the exercise of its discretion . . . and it must then be exercised in favor of that party . . . .' " (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889], citations omitted; see also *Langford v. Superior Court* (1987) 43 Cal.3d 21, 28 [233 Cal.Rptr. 387, 729 P.2d 822].) In all cases, however, the trial court's decision to grant or deny a preliminary injunction rests in the sound discretion of the court, based upon its consideration and evaluation of the circumstances of the case. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 849–850 [39 Cal.Rptr.2d 21, 890 P.2d 43].)

In light of the discretion vested in the trial court in addressing a motion for a preliminary injunction, appellate review of a trial court's ruling on such a motion is deferential. A reviewing court shall not disturb a trial court's decision to grant or deny a motion for a preliminary injunction absent a showing that the trial court abused its discretion. (*Salazar v. Eastin, supra,* 9 Cal.4th at pp. 849–850.) The test for abuse of discretion is whether the trial court "exceeded the bounds of reason." (*Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].)

With these principles set in place as a foundation, we turn to ALADS's arguments on appeal.

## III. *ALADS Is Not Likely to Prevail Under the Public Safety Officers Procedural Bill of Rights Act*

ALADS's first contention involves the POBR. (§ 3300 et seq.) ALADS contends the trial court's decision to deny its motion for a preliminary

injunction must be reversed because the court based its decision on an erroneous interpretation of section 3303, subdivision (i). More specifically, ALADS contends the trial court wrongly interpreted section 3303, subdivision (i), to permit a police agency to impose "reasonable" limits on a police officer's statutory right under the POBR to consult with counsel of his or her choosing in connection with an official interrogation. We find no fault with the trial court's statutory interpretation.

As relevant to ALADS's current case, section 3303, subdivision (i), provides: "[W]henever an interrogation focuses on matters that are likely to result in punitive action against any public safety officer, that officer, at his or her request, shall have the right to be represented by a representative of his or her choice who may be present at all times during the interrogation. . . ."

A. *Reasonable limits may be placed on a police officer's right to counsel of choice*

The trial court cited *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294 [4 Cal.Rptr.3d 629] (*Upland*), in support of its conclusion that section 3303, subdivision (i), permits a police agency to impose "reasonable" limits on a police officer's statutory right under the POBR to consult with counsel of his or her choosing. ALADS contends the trial court in the current case misread *Upland*, and that *Upland* did not approve an "over-reaching" rule that a police agency may impose "reasonable restrictions" on a police officer's right under the POBR to consult with counsel of his or her choosing. ALADS's arguments fail to persuade us that the trial court's interpretation of section 3303, subdivision (i), is so infected with error that it mandates reversal of the court's decision to deny a preliminary injunction.

In *Upland*, a police department served Officer Nikola Kac with a written notice of an internal affairs interrogation. Shortly thereafter, the department and Officer Kac's lawyer agreed to conduct the interrogation on a specific date, at a specific time. On the appointed date for the interrogation, Officer Kac's lawyer notified the department that he had been delayed on another matter, and could not attend the interrogation. The department went forward with the interrogation in the absence of Officer Kac's lawyer. Officer Kac (joined by the police officers association) thereafter filed suit against the department, and the trial court issued a preliminary injunction which prohibited the department " 'from proceeding with an interrogation of an officer if the representative of his or her choice is unavailable.' " (*Upland, supra*, 111 Cal.App.4th at pp. 1297–1299.)

The Court of Appeal reversed the order granting the preliminary injunction, finding, in essence, that the injunction was overly broad: "[W]e fully support the officer's right to be represented by a person of his or her choice during an interrogation. We only hold that such a right *is not unlimited.* The officer must choose a representative who is *reasonably available* to represent the officer, and who is physically able to represent the officer at the reasonably scheduled interrogation. But it is the officer's responsibility to secure the attendance of his or her chosen representative at the interrogation. If he or she is unable to do so, the officer should select another representative so that the interrogation may proceed 'at a reasonable hour.' . . . This is particularly true when, as here, the interrogation has already been scheduled at a mutually agreeable time. Neither the Department nor the officer should be expected to change their schedules simply to accommodate a busy attorney, particularly since other members of the firm could have represented the officer at the scheduled questioning." (*Upland, supra,* 111 Cal.App.4th at p. 1306, citation omitted, italics added.)

The *Upland* court essentially ruled that a police officer's right to representation under section 3303, subdivision (i), did not include—as the literal language of the injunction provided—an absolute right to be represented by *any* counsel of the officer's choosing. To do so, concluded the court, would effectively empower a police officer to prevent any interrogation simply by choosing a representative who would never be available for an interrogation. (*Upland, supra,* 111 Cal.App.4th at pp. 1303–1306.) To avoid that result, the *Upland* court ruled that a police officer's choice of counsel must *reasonably* accommodate his or her department's interests in conducting a prompt and efficient investigation of an officer-involved shooting incident. (*Ibid.*)

 Returning to ALADS's case, we agree with the trial court that section 3303, subdivision (i), as interpreted in *Upland,* permits a police agency to impose "reasonable" limits on a police officer's statutory right under the POBR to consult with counsel of his or her choosing during an interrogation regarding an officer-involved shooting.

B. *The restrictions here are reasonable*

Taking an alternative tack, ALADS next contends that, assuming section 3303, subdivision (i), does allow a police agency to impose reasonable limits on a police officer's right to representation, "the restrictions the . . . Department sought to impose in this instance are not reasonable." We disagree.

This is ALADS's entire argument in support of its assertion that the Department's policy revisions are unreasonable: "[T]he restriction [against

huddling] occurs at a crucial time. Statements made by deputies during their . . . interrogations can be used against them not only criminally but also administratively. [¶] ALADS, upon recognizing its duty to provide fair representation to its members, selected the law office of Green & Shinee to represent its deputy sheriffs in officer involved shooting incidents. . . . The [Department's] unilaterally implemented policy which prohibits deputies from meeting with counsel *in a group* improperly violates deputies' right to counsel as mandated by the state and federal constitutions and by the [POBR]. This interference was incorrectly deemed reasonable by the trial court. It is not reasonable as it interferes with how a client can interact with counsel before providing very crucial and potentially criminally and administratively harmful statements."

We find ALADS's conclusory assertions to be insufficient to establish that the Department's policy revisions are "unreasonable" as a matter of law. ALADS's argument would be more persuasive had the Department tried completely to prevent a deputy from meeting with counsel. (See *Long Beach Police Officer Assn. v. City of Long Beach* (1984) 156 Cal.App.3d 996 [203 Cal.Rptr. 494] (*Long Beach*).) The Department's anti-huddling policy revisions, however, expressly protect a deputy's right to meet with counsel individually. The only issue, therefore, is whether the Department acted unreasonably when it decided to prohibit "huddling" between multiple deputies and a single lawyer. In our view, the trial court's assessment of reasonableness was not incorrect as a matter of law, and, thus, the court's decision to deny a preliminary injunction should not be reversed.

We agree with ALADS that an official interrogation following an officer-involved shooting incident "occurs at a crucial time" and that, correspondingly, the officer should have legal representation in the event he or she so desires counsel. The Department's policy revision recognizes as much. The Department's policy revision expressly provides that a deputy may consult individually with counsel before being interrogated by an investigator. The Department's "anti-huddling" policy only precludes an officer from getting together in a group with other officers and a lawyer, the objective of the policy being to assure the collection of "accurate witness accounts before the recollection of witnesses can be influenced by the observation of other witnesses."

After a deputy's initial interview, he or she may engage any lawyer that he or she desires and may have any type of relationship with that lawyer (individual or communal) that he or she desires. In other words, after an initial interrogation, any number of officers may choose to be represented by the same lawyer in any subsequent administrative or criminal proceeding.

Juxtaposing the limited and temporary qualification on a deputy's right to counsel under the Department anti-huddling policy against the rational objectives of that policy, we cannot say the Department's policy revision is unreasonable as a matter of law. In short, we cannot find the trial court abused its discretion by finding that it is unlikely that ALADS will prevail at trial on its claim that the Department's anti-huddling policy revision violates section 3303, subdivision (i).

## IV. *ALADS Is Not Likely to Prevail on Its Constitutional Claims*

The trial court found that ALADS is unlikely to prevail on its constitutional claims, finding "[t]here is no constitutional 'right to huddle' [in a group with counsel]." ALADS contends the trial court erroneously distinguished *Long Beach, supra*, 156 Cal.App.3d 996, in concluding that the Department's anti-huddling policy revision will not abridge its deputies' constitutional right to consult with counsel. We disagree.

### A. *The Fifth and Sixth Amendments*

In *Long Beach*, the chief of the police department issued a directive prohibiting the department's police officers who were involved in a shooting from consulting with an attorney or representative of the police officers association prior to the filing of a written or oral report concerning the incident. (*Long Beach, supra*, 156 Cal.App.3d at p. 999.) The chief of the police department had determined that the directive was necessary because of prior instances in which an officer's consultation with an attorney or the police officers association had interfered with the department's investigation of the shooting incident. (*Ibid.*) The police officers association filed an action to enjoin implementation of the directive, and the trial court issued a preliminary injunction.

Division Three of our court affirmed the trial court's decision to issue injunctive relief, *ruling that the police department had violated the meet-and-confer requirements of the MMBA by unilaterally implementing the new, no attorney policy.* As Division Three explained: "The [police department's] unilateral decision to abolish the practice [of allowing officers to consult with counsel] prevented a meaningful and possibly amicable solution to this dispute by negotiation. [¶] The [police officers association] has represented that its attorneys were willing to abide by any reasonable restrictions in the practice. We accept this representation at face value and conclude that the [police department's] unilateral abrogation of the past practice was in violation of the MMBA's meet and confer provisions contained in section 3505." (*Long Beach, supra*, 156 Cal.App.3d at p. 1011.)

Division Three then expressly stated that, because it had resolved the appeal on the basis of the collective bargaining agreement and the MMBA, it

was "*unnecessary . . . to decide the [police officers association's claims under] the Fifth and Sixth Amendments of the United States Constitution.*" (*Long Beach, supra,* 156 Cal.App.3d at p. 1011, italics added.)

With regard to ALADS's current case, we agree with the trial court that the facts and circumstances are significantly and materially different from those which were presented in *Long Beach,* where a police department *completely* prohibited an officer from consulting with counsel. In ALADS's current case, a deputy has the express right to consult with counsel individually, and is precluded only from huddling with a group of other deputies and a common attorney.

More importantly, *Long Beach* expressly stated that it *did not address the constitutional issue* of whether a police agency runs afoul of the constitutional right to counsel when it regulates an officer's consultation with counsel. Given the issues that were and were not decided in *Long Beach,* and given that all of ALADS's constitutional arguments rest on its incorrect assertion that *Long Beach* stated that public concern for timely revelation of facts in shooting cases does not outweigh the potential violation of an officer's right to counsel under the Fifth and Sixth Amendments, we decline to assign error to the trial court's constitutional ruling. ALADS simply has not met its burden on appeal to persuade us that the Department's policy revisions operate to effect a violation of a deputy's constitutional right to counsel; *Long Beach* does not support such a proposition.

## B. *The First Amendment*

In a different constitutional vein, ALADS contends the Department's deputies have a recognized right of association under the First Amendment to the United States Constitution, that this First Amendment right guarantees the deputies the right to huddle with counsel, and that the Department's policy revision violates that right.[5] The three cases cited by ALADS do not persuade us to overturn the trial court's order denying a preliminary injunction because we disagree that they support the proposition that two or more individuals have a right to huddle with counsel.

*Denius v. Dunlap* (7th Cir. 2000) 209 F.3d 944 (*Denius*) involved a lone plaintiff. The issue in *Denius* was whether an employer could require the plaintiff, as a condition of employment, to waive his attorney-client privilege, and to divulge communications that the plaintiff may have had with lawyers

---

[5] ALADS did not allege a violation of the First Amendment in its complaint, but did argue the issue in its points and authorities filed in the trial court in support of its motion for injunctive relief.

whom he had retained in the past or would retain in the future. The Seventh Circuit Court of Appeals said no. (*Denius*, at pp. 959–960.)

*Mothershed v. Justices of Supreme Court* (9th Cir. 2005) 410 F.3d 602 also involved a lone plaintiff. The State Bar of Arizona censured the plaintiff for engaging in the unlawful practice of law because, although the plaintiff was admitted to the bar in Oklahoma, he was not admitted to the bar in Arizona. The issue in *Mothershed* was whether Arizona's regulation of its legal profession—i.e., the requirement that a person be admitted to the bar in the state in order to practice law in the state—unconstitutionally interfered with the public's right under the First Amendment to retain a lawyer of their choosing, to wit, the plaintiff. The Ninth Circuit Court of Appeals said no. (*Mothershed*, at p. 612.)

*Swidler & Berlin v. United States* (1998) 524 U.S. 399 [141 L.Ed.2d 379, 118 S.Ct. 2081] involved the issue of attorney-client privilege. Nine days before he committed suicide, Deputy White House Counsel Vincent Foster met with an attorney to discuss possible criminal proceedings arising from an investigation conducted by the Office of the Independent Counsel. After Foster's death, the Office of the Independent Counsel subpoenaed Foster's lawyer to compel him to turn over the notes from his meeting with Foster. The Supreme Court ruled the notes were protected from disclosure by the attorney-client privilege. (*Swidler & Berlin*, at p. 411.)

ALADS's current case has nothing to do with waiving attorney-client privilege. (Cf. *Denius, supra*, 209 F.3d 944.) The Department is not requiring any of its deputies to divulge confidential communications with their lawyers. ALADS's current case has nothing to do with the regulation of the legal profession. (Cf. *Mothershed v. Justices of Supreme Court, supra*, 410 F.3d 602.) ALADS's current case has nothing to do with compelled disclosure by subpoena of confidential communications between an attorney and his or her client. (Cf. *Swidler & Berlin v. United States, supra*, 524 U.S. 399.)

Although ALADS's legal authorities abstractly support the well-recognized proposition that an individual's First Amendment right of association includes a right to hire and consult with an attorney, none of ALADS's legal authorities is helpful in evaluating whether or not the Department's anti-huddling policy revision unconstitutionally infringes upon that right in the factual context of the current case.

## V. *ALADS Is Not Likely to Prevail Under the Meyers-Milias-Brown Act*

The trial court ruled that ALADS is unlikely to prevail on its claim that the Department's unilateral decision to implement its anti-huddling policy revision violated the MMBA. (§ 3500 et seq.) ALADS contends the trial court's

decision rested on its erroneous legal conclusion that sections 3504 and 3505, as interpreted by the Supreme Court in *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623 [47 Cal.Rptr.3d 69, 139 P.3d 532] (*Claremont*), did not require the Department to "meet and confer" with ALADS before the Department implemented its policy revision. ALADS's arguments fail to persuade us that the trial court's interpretation of sections 3504 and 3505 is so infected with error that it mandates reversal of the court's decision to deny a preliminary injunction.

The purpose of the MMBA is to "promote full communication between public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500, subd. (a).) To that end, the MMBA establishes a comprehensive statutory scheme for resolving disputes in the arena of the public workplace.

■ Generally speaking, the MMBA implements its dispute-resolution purposes through two statutes which attempt to reconcile (1) the interest in resolving disputes between management and workers regarding wages, hours and other terms and conditions of employment, and (2) the interest in allowing management to make necessary decisions for the efficient operation of government, without having to meet and confer about every decision. Section 3504 provides: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order." Section 3505 requires a public employer to meet and confer with a recognized employee organization when disputes arise over matters that fall within the scope of representation, i.e., when disputes arise over wages, hours, and other terms and conditions of public employment.

### A. *The three-part* Claremont *test*

In *Claremont*, the police department implemented a tracking program to determine whether police officers were engaging in racial profiling. (*Claremont, supra*, 39 Cal.4th at p. 628.) The police officers association filed a petition for writ of mandate to compel the department not to implement the racial profiling tracking program until the department had satisfied the meet-and-confer requirements prescribed by the MMBA. The basic thrust of the association's petition rested on the allegation that the racial profiling tracking program constituted a matter within the "scope of representation," and that, as such, the department was required to meet and confer in accord

with the provisions of the MMBA before implementing the program. The trial court denied the association's petition, the Court of Appeal reversed the trial court, and the Supreme Court reversed the Court of Appeal, and held that the police department's racial profiling tracking program did not fall within the "scope of representation." ·

■ The Supreme Court clarified a three-part test to be applied when determining whether a matter falls within the scope of representation, and, thus, must comply with the MMBA's meet-and-confer requirements. "First, we ask whether the management action has 'a significant and adverse effect on the wages, hours, or working conditions of the bargaining-unit employees.' . . . If not, there is no duty to meet and confer. . . . Second, we ask whether the significant and adverse effect arises from the implementation of a fundamental managerial or policy decision. If not, then . . . the meet-and-confer requirement applies. . . . Third, if both factors are present—if an action taken to implement a fundamental managerial or policy decision has a significant and adverse effect on the wages, hours, or working conditions of the employees—we apply a balancing test. The action 'is within the scope of representation only if the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about the action in question.' . . . In balancing the interests to determine whether parties must meet and confer over a certain matter . . . , a court may also consider whether the 'transactional cost of the bargaining process outweighs its value.' " (*Claremont, supra,* 39 Cal.4th at p. 638, citations omitted.)

After clarifying this test, the Supreme Court applied the test to the facts presented in *Claremont,* and concluded that the police department's racial profiling tracking program did not require the department to meet and confer under the MMBA. At the same time, the Supreme Court carefully explained that it had not decided "whether such a duty [to meet and confer] would exist should issues regarding officer discipline, privacy rights, and other potential effects . . . arise after the [department] implements the [program]." (*Claremont, supra,* 39 Cal.4th at pp. 638–639, citation omitted.)

B. *The trial court properly applied the* Claremont *case*

In ALADS's current case, the trial court applied *Claremont*'s three-part test, and concluded that the Department was not required to meet and confer with ALADS under the MMBA prior to implementing its anti-huddling policy revision. ALADS's arguments on appeal do not persuade us that the trial court's conclusion is necessarily flawed.

### C. *There is no significant and adverse effect on a "working condition"*

There is no evidence in the record to suggest that the Department's anti-huddling policy revision will have a significant and adverse effect on deputies' wages or hours. The only issue, therefore, is whether the Department's policy revision will have a significant and adverse effect on the "working conditions" of the Department's deputies. What is a "working condition" within the meaning of the MMBA? The answer to that question may be found in *Long Beach, supra*, 156 Cal.App.3d 996.

In *Long Beach*, a collective bargaining agreement between the police department and the police officers association expressly provided that it covered the " 'wages, hours and working conditions of the [department's] employees,' " and that there would be " 'no reduction by virtue of this agreement in existing consistently applied past practices . . . .' " (*Long Beach, supra*, 156 Cal.App.3d at pp. 998–999, italics omitted.) In other words, the collective bargaining agreement between the police department and the police officers association in *Long Beach* effectively defined "working conditions" to include "existing consistently applied past practices."

In ALADS's current case, ALADS alleges that the right of the Department's deputies to huddle with counsel is a "working condition" because it has been a "consistent and established practice . . . for over 25 years." The problem we see with ALADS's argument is that it has not shown us any provision in the parties' MOU which defines "working conditions" to include "consistent and established practices." For this reason, alone, ALADS has not shown that it is likely to prevail on its meet-and-confer claim under the MMBA.

Further, section 3303, subdivision (i), does not support the proposition that a right to huddle with counsel is a necessary component of a peace officer's working conditions. Section 3303, subdivision (i), provides that a "public safety officer" has a right to be represented by legal counsel of "his or her choice." The right protected under section 3303, subdivision (i), is an individual officer's right to counsel, and does not expressly protect a right to huddle in a group with counsel.

### D. *The practice arose from the implementation of a fundamental managerial or policy decision*

Putting aside the "working condition" issue, did the significant and adverse effect on the deputies' practice of huddling with counsel arise from the implementation of a fundamental managerial or policy decision? If the answer is yes, then the Department had no meet-and-confer obligation; if

the answer is no, then the meet-and-confer requirement applied. (*Claremont, supra,* 39 Cal.4th at p. 638.)

■ Section 3504 of the MMBA incorporates the principle developed in federal law that employers have a right to make unconstrained decisions when fundamental management or policy choices are involved. (*Building Material & Construction Teamsters' Union v. Farrell* (1986) 41 Cal.3d 651, 663 [224 Cal.Rptr. 688, 715 P.2d 648].) For example, an employer need not bargain about a decision to close a plant for economic reasons, nor is an employer required to bargain about its decision to cancel a contract even though layoffs may result from the cancellation. (*Ibid.*) In the *Building Material* case, the Supreme Court held that a public agency's decision to eliminate bargaining-unit positions and to outsource work to nonunit employees was subject to the MMBA's meet-and-confer requirements. (*Building Material & Construction, supra,* 41 Cal.3d at p. 664.) The Supreme Court came to this conclusion based on these reasons: "[The public agency's] decision to reorganize certain work duties was hardly 'fundamental' [because it] had little, if any, effect on public services. Rather, it primarily impacted the wages, hours, and working conditions of the employees in question . . . ." (*Ibid.*)

As we noted above, the Department's decision to implement its anti-huddling policy revision had no effect on wages and hours, and ALADS has not shown that it affected a recognized working condition. In contrast, the Department's express objective in implementing its policy revision was to collect accurate information regarding deputy-involved shootings. Plainly, the purpose of the policy revision was to foster greater public trust in the investigatory process. For these reasons, we find the Department's decision to implement its policy revision arose from the implementation of a fundamental managerial or policy decision, and, thus, was outside the meet-and-confer requirements of the MMBA.

E. *The balancing test weighs in favor of the Department*

Is the Department's need for unencumbered decisionmaking in managing its operations outweighed by the benefit to employer-employee relations of bargaining about the action in question? For the reasons explained in parts C. and D., *ante,* we answer this question "no." The deputies' working condition claim is tenuous, and the Department's interest in public accountability is significant on its face.

ALADS's arguments heavily rely on *Long Beach, supra,* 156 Cal.App.3d 996. We understand ALADS's reliance on *Long Beach* but, after careful thought, reject its argument that the case cements its position that the

Department was obligated to meet and confer in accord with the MMBA before implementing its anti-huddling policy revision. As we discussed above, *Long Beach* involved a police department's directive completely prohibiting its police officers who were involved in a shooting incident from consulting with an attorney or representative of the police officers association prior to the filing of a written or oral report concerning such incident. (*Long Beach, supra,* 156 Cal.App.3d at p. 999.) Division Three of our court, writing more than 20 years before *Claremont,* found the past practice of consulting with a lawyer was a working condition, and was subject to meet-and-confer requirements.

We find *Long Beach* unpersuasive for two reasons. First, as we explained above, ALADS has not persuaded us that the prior practice under which deputies huddled collectively with counsel is a recognized working condition. Second, *Long Beach* dealt with a complete ban against a deputy meeting with counsel, and, thus, in a balancing of equities, the interest of each individual deputy in the right to counsel was significant. In contrast, the balancing of equities in ALADS's current case is not so strongly in favor of an individual deputy because he or she has the right to consult with counsel under the Department's policy.

## VI. *ALADS's Evidence of Harm Does Not Predominate*

ALADS contends the trial court's decision to deny its motion for a preliminary injunction must be reversed because the evidence showed that the Department's deputies will suffer greater interim harm from the denial of a preliminary injunction than the Department would suffer from the issuance of a preliminary injunction. We disagree with ALADS that its evidence of harm predominated.

The Department's arguments on appeal do not point us to any specific evidence in the record tending to show an instance where "huddling" interfered with an investigation of a shooting incident. This is not surprising because the record does not reflect any evidence submitted by the Department in opposition to ALADS's motion for a preliminary injunction.

In contrast, ALADS submitted evidence showing that it has retained the law firm of Green & Shinee to represent deputies who are actors in or witnesses to deputy-involved shooting incidents, and that individual deputies are adversely affected when they are not permitted to be represented by counsel that their union has selected and when they have paid union dues which are used to compensate those lawyers. ALADS's evidence also showed that it is logistically unworkable for several attorneys from different law firms to respond in a timely fashion to represent deputies who become involved in a

shooting incident. ALADS's evidence further showed that shooting incidents often take place after the normal business workday, and at locations which are not always near an available attorney. Finally, ALADS's evidence showed that unified representation by a single law firm is more economical, and that it would be more costly for ALADS to compensate various attorneys from various law firms during an investigation involving a shooting incident. In addition, there are only a small number of law firms in Los Angeles that are familiar with representing law enforcement personnel in shooting incidents, and that it was possible there is not a sufficient number of attorneys who could represent deputies in the event of a multiple-officer incident.

Given our finding that the Department's anti-huddling policy does not prohibit the same lawyer, or different lawyers from the same law firm, from meeting individually with many different deputies, ALADS's evidence of harm is ameliorated, and does not predominate.

VII. *The Policy Does Not Violate the Deputies' Constitutional Rights*

ALADS contends the Department's implementation of its new polices governing deputy-involved shooting incidents has resulted in a situation where deputies are treated "like criminal suspects." Starting from this predicate, ALADS argues the Department's anti-huddling policy revision violates its deputies' constitutional right to counsel under the Fifth and Sixth Amendments. ALADS further argues that the Department's policy revision violates its deputies' constitutional right to counsel under the First Amendment. For all of the reasons explained above, we disagree. The Department's policy revision expressly recognizes a deputy's right to consult with counsel.

ALADS's reliance on *NLRB v. Weingarten, Inc.* (1975) 420 U.S. 251 [43 L.Ed.2d 171, 95 S.Ct. 959], and its progeny, does not persuade us to reach a different conclusion. In *Weingarten*, the National Labor Relations Board ruled that an employer's denial of an employee's request that her union representative be present at an investigatory interview constituted an unfair labor practice, and issued a cease-and-desist order. The Supreme Court affirmed the board's decision.

In ALADS's current case, the Department's anti-huddling policy revision does not violate the *Weingarten* rule because the Department's policy expressly provides that a deputy may meet with an ALADS representative prior to being interviewed. We reject ALADS's argument that *Weingarten* supports the principle that a deputy has a communal right to huddle with other deputies and counsel.

ALADS's repeat of its First Amendment arguments is rejected for the same reasons we articulated above. (See pt. IV.B., *ante.*) ALADS's reliance on

the rule that a union has the right to hire attorneys to assist union members is not helpful. (See, e.g., *Mine Workers v. Illinois Bar Assn.* (1967) 389 U.S. 217, 221–222 [19 L.Ed.2d 426, 88 S.Ct. 353].) We see nothing in the Department's anti-huddling policy revision that prevents ALADS from hiring an attorney to represent a deputy or deputies involved in a shooting incident.

VIII. *There Is No Evidence in the Record to Support ALADS's Argument That the Department Interfered with Its Members' Right to Counsel.*

ALADS states there was a shooting incident on November 6, 2006, involving four deputies. ALADS further states that, "during a critical stage" in the investigation of the shooting, the Department "sequestered deputies," and "precluded the deputies from meeting with counsel in a group." ALADS contends the Department's actions were "an effort to control how ALADS counsel could consult with multiple deputies involved in [the] shooting incident." We ignore all of the above as beyond the scope of the current appeal.

ALADS then appears to argue that the Department's fears about the possibility of "collusion" between deputies, and/or "coached" statements or interview responses, are not sufficient to uphold the Department's anti-huddling policy revision. These fears are unjustified, argues ALADS, because lawyers are prohibited by disciplinary rules from preparing or presenting false or perjured testimony or evidence. According to ALADS, the public's interest in the prompt and accurate collection of information from the actors and witnesses involved in a shooting incident should not "take priority over [a deputy]'s right to counsel under the Fifth and Sixth Amendment." We agree with ALADS, but note once again that the Department's anti-huddling policy revision protects the right of every individual deputy to meet with counsel.

The bottom line on this appeal comes down to this: We cannot say that the trial court acted beyond the bounds of reason in denying ALADS's motion for a preliminary injunction. At trial, ALADS may or may not prevail, but we cannot say that the trial court was required as a matter of law to enjoin the Department from implementing its anti-huddling policy revision pending a final judgment. In the meantime, if an individual deputy can show that he or she was harmed, or is being harmed, or will be harmed, by some violation of his or her statutory or constitutional rights, then that is a matter for another day, and another case.

## DISPOSITION

The trial court's order denying ALADS's motion for a preliminary injunction is affirmed. Respondents are to recover their costs on appeal.

Cooper, P. J., and Flier, J., concurred.

On September 24, 2008, and October 6, 2008, the opinion was modified to read as printed above.