Filed 5/20/26  Netes v. CHA Hollywood Medical Center CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELLA NETES,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>CHA HOLLYWOOD MEDICAL CENTER, L.P.,<br><br>     Defendant and Respondent. | B346636<br><br>Los Angeles County<br>Super. Ct. No. 23CHCV00861<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on May 4, 2026, be modified as follows:

1.      On page 2, the second sentence of the first paragraph is deleted, and the following is inserted in its place: "Netes alleged a doctor at the hospital misdiagnosed her with terminal kidney disease and she was improperly referred to hospice care."

2. On page 10, the second sentence of footnote 3 is deleted, and the following is inserted in its place: "The TAC alleges one of the signatories purported to be Netes's 'guardian and caregiver.' Presumably, a guardian and caregiver would have had authority to authorize disclosure. (See Civ. Code, § 56.11, subd. (b)(3)(B).)"

Appellant's petition for rehearing, filed on May 14, 2026, is denied.

There is no change in the judgment.

_____

EGERTON, J.          EDMON, P. J.          HANASONO, J.

Filed 5/4/26  Netes v. CHA Hollywood Medical Center CA2/3 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ELLA NETES,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>CHA HOLLYWOOD MEDICAL CENTER, L.P.,<br><br>  Defendant and Respondent. | B346636<br><br>Los Angeles County Super. Ct. No. 23CHCV00861 |

APPEALS from a judgment and order of the Superior Court of Los Angeles County, Andrew E. Cooper, Judge.  Dismissed in part and affirmed.

Ella Netes, in pro. per., for Plaintiff and Appellant.

La Follette Johnson Dehaas Fesler & Ames, Arthur A. Zitsow, Mark B. Guterman and Jeffrey A. Rector for Defendant and Respondent.

───────────

Ella Netes filed a complaint against CHA Hollywood Medical Center, L.P. (HMC) related to care she received at HMC's hospital. Netes alleged a doctor at the hospital misdiagnosed her with terminal kidney disease and improperly referred her to hospice care. Netes asserted HMC was directly liable because it was responsible for the blood test result upon which the doctor relied to make the misdiagnosis. Netes also alleged HMC unlawfully disclosed her medical information to the hospice provider. The trial court sustained HMC's demurrer to Netes's third amended complaint without leave to amend and dismissed the action. Netes filed a motion for reconsideration, which the trial court denied. Netes appealed the judgment and order denying her motion for reconsideration. We affirm the judgment and dismiss Netes's appeal of the order denying her motion for reconsideration.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Netes's claims*

Netes filed the original complaint in this action in March 2023. She named as defendants HMC, three doctors, and a nurse practitioner. Netes eventually dismissed all the defendants except HMC. Netes voluntarily filed a first amended complaint, and she filed two more amended complaints in response to HMC's demurrers.

Netes's operative third amended complaint (TAC) alleges the following: Netes was transferred from a skilled nursing facility (SNF) to HMC's emergency department on December 28, 2021. Netes was suffering severe lower abdominal pain in her bladder area, an underactive bladder, and anemia. Nurses in the emergency department told Netes her anemia was life threatening and required a blood transfusion. The nurses

2

said patients with urinary retention often end up with severe kidney diseases that require dialysis.

On December 28, 2021, Netes's treating physician—Dr. Imad El Asmar[1]—misdiagnosed her with "chronic kidney disease stage 5." Dr. El Asmar relied solely on a blood test report showing "critical values" related to Netes's kidneys. The blood test results were not consistent with Netes's "symptoms, signs, and medical history," and a urinalysis performed around the same time showed her kidneys were functioning normally. Dr. El Asmar also misdiagnosed Netes with early dementia with psychotic features. Netes remained hospitalized for several weeks and received two blood transfusions.

Netes was discharged from the hospital and released to a board and care (B&C) facility on January 18, 2022. Netes's discharge documents "were signed by [an] unidentified guardian and caregiver." The discharge instructions recommended "driving limitations," which "triggered" a "car sale."

Three days after Netes was discharged from HMC—on January 21, 2022—a hospice nurse visited her at the B&C facility and "communicated that H[ ]MC as 'caregiver' referred her to hospice." The referral was based on Dr. El Asmar's "misdiagnosis [of] chronic kidney disease stage 5" and medical records provided by HMC. Netes became "functional" in March 2022 and "initiated hospice discharge in May 2022." Netes was discharged from hospice two months later, in July 2022.

Netes asserted three causes of action against HMC. In support of her first cause of action—"breach of duties;

---

[1] Netes alleged Dr. El Asmar "was her [primary care physician] prior to admission" to HMC.

misrepresentation of Plaintiff's state of health"—Netes alleged Dr. El Asmar misdiagnosed her with "chronic kidney disease stage 5," severe cardiac conditions, and several other diseases. In support of her second cause of action—"improper referrals"— Netes alleged Dr. El Asmar's misdiagnosis caused a referral to hospice and restrictions on her driving privileges. She also alleged her request for a referral to an SNF covered by her insurance "was denied." In support of her third cause of action —"violation of privacy right, and . . . unauthorized disclosure of identifiable medical information"—Netes alleged an HMC associate released her medical information to the hospice provider without authorization. According to Netes, the unauthorized disclosure violated the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.). Netes sought $467,600 in compensatory damages.

**2.** ***HMC's demurrer***

HMC filed a demurrer to the TAC for failure to state a cause of action and uncertainty. HMC argued Netes's first cause of action arose out of Dr. El Asmar's alleged negligence, but Netes failed to plead a viable theory of vicarious liability. According to HMC, hospitals and physicians generally do not have an agency relationship. HMC also argued Netes failed to allege causation, because the TAC is "completely vague and uncertain regarding what injury" HMC caused Netes to suffer.

HMC argued Netes's second cause of action failed because she did not allege HMC was responsible for the transfer to hospice care. HMC noted physicians—not hospitals—decide whether to transfer patients. HMC also noted Netes alleged she was discharged from the hospital three days before she was transferred to hospice care.

4

As to Netes's third cause of action, HMC argued she failed to allege facts showing its disclosure of medical information to hospice was improper. HMC argued the disclosure fell within the scope of Civil Code section 56.10, subdivision (c)(1), which authorizes the disclosure of medical information "to providers of health care . . . or other health care professionals or facilities for purposes of diagnosis or treatment of the patient."

In opposition to the demurrer, Netes argued she did not seek to hold HMC vicariously liable for Dr. El Asmar's actions. Instead, she alleged HMC is directly liable for the blood test results that Dr. El Asmar relied on for his misdiagnosis. Netes suggested she also alleged "theft at H[ ]MC" as well as "damages caused by release of records and discharge arrangements."

The trial court considered the demurrer at a hearing on March 14, 2025. Before the hearing, the court gave the parties a tentative ruling sustaining the demurrer without leave to amend. At the hearing, the court repeatedly asked Netes if she wanted to address any issues raised by the demurrer or the tentative ruling. Netes told the court she had new "facts to allege and evidence to present" showing her causes of action are viable. However, she did not want to present them to the court orally. Instead, she would "put everything in writing" and present her information in a "concise and clear fashion" in a motion for reconsideration. The court adopted its tentative ruling and sustained the demurrer without leave to amend.

### 3. *Netes's motion for reconsideration*

A few days after the court sustained HMC's demurrer to the TAC, Netes filed a motion for reconsideration of the order. Netes suggested reconsideration was warranted because she

5

discovered new evidence after filing her opposition to the demurrer.

Netes stated her fourth amended complaint would "focus on breach of fiduciary duties of confidentiality, loyalty, good faith, actual fraud." She asserted she would add new allegations that HMC improperly rewarded Dr. El Asmar for referring her to HMC, failed to inform her about the lack of insurance coverage, required her to sign a release of information as a condition of admission, made a "de-facto referral to hospice," and "enabled improper induction to hospice." Netes asserted her damages "were caused by discharge arrangements with unauthorized release of identifiable medical information to hospice; theft at H[ ]MC when Plaintiff's condition was severe after [second] blood transfusion, not having Plaintiff sign Admission Assessment Inquiry."

The trial court denied the motion for reconsideration. The court stated Netes identified newly discovered evidence, but she failed to explain why she did not present it earlier or how it impacts the merits of her claims. The court noted it gave Netes the opportunity to present her arguments at the demurrer hearing in March 2025, but Netes insisted on filing a motion for reconsideration instead.

The court entered judgment of dismissal for HMC. Netes filed a timely notice of appeal. Netes's notice states she appeals both the judgment of dismissal and the "Motion for Reconsideration, filed before judgment was entered."

6

## DISCUSSION

### 1. *We dismiss Netes's appeal of the motion for reconsideration*

Netes purports to appeal both the judgment of dismissal and the trial court's post-judgment order denying her motion for reconsideration. An order denying a motion for reconsideration is "not an appealable order under any circumstances." (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2008) 166 Cal.App.4th 1625, 1633; see Code Civ. Proc., § 1008, subd. (g) [an "order denying a motion for reconsideration . . . is not separately appealable"].) Therefore, we dismiss that portion of Netes's appeal. (See *Association,* at p. 1633.) However, we will consider the arguments in Netes's motion for reconsideration to the extent they are relevant to her appeal of the judgment, including whether she should be granted leave to file an amended complaint. (See Code Civ. Proc., § 1008, subd. (g) [the denial of a motion for reconsideration is reviewable as part of an appeal from an appealable order].)

### 2. *The trial court properly sustained the demurrer without leave to amend*

We are mindful Netes represents herself on appeal, as she did in the trial court. Nevertheless, she " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1; see *Simms v. Bear Valley Community Healthcare Dist.* (2022) 80 Cal.App.5th 391, 406, fn. 5 [self-represented party is "held to the same standard of knowledge of law and procedure as an attorney"].) Thus, she is bound by the fundamental rule of appellate review that an appealed judgment or order is presumed

7

correct, and error must be affirmatively shown. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *Denham v. Superior Court of Los Angeles County* (1970) 2 Cal.3d 557, 564.) The party asserting trial court error may not rest on the bare assertion of error but must present argument and legal authority on each point raised. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.) Accordingly, "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta*); *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894; see also *Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 205 [explaining these "same rules apply to a party appearing in propria persona as to any other party"].)

In reviewing a judgment of dismissal after a trial court has sustained a demurrer, "we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) "We 'assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' " (*Hanouchian v. Steele* (2020) 51 Cal.App.5th 99, 106.) Even though the trial court's order sustaining the demurrer is subject to this court's de novo review, the standard of review does not relieve Netes of her burden to demonstrate error. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).)

Netes has not met her burden here. As best we can tell, Netes's first and second causes of action—for "misrepresentation

of Plaintiff's state of health" and "improper referrals"—are premised on the allegation that Dr. El Asmar misdiagnosed Netes with "chronic kidney disease stage 5." That misdiagnosis allegedly led to an unnecessary referral to a B&C facility and then to Samaritan Hospice Care—rather than to Netes's preferred SNF—which caused Netes to suffer damages.[2] These are essentially medical negligence claims. The elements of a medical negligence claim are "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Turpin v. Sortini* (1982) 31 Cal.3d 220, 229–230.)

Although not clear from the TAC itself, Netes clarified in opposition to HMC's demurrer that she did not seek to hold HMC vicariously liable for Dr. El Asmar's conduct. Instead, she claimed HMC is directly liable for the misdiagnosis and referrals because its staff and laboratory were responsible for the blood test report upon which Dr. El Asmar relied.

Contrary to Netes's contentions, the fact that Dr. El Asmar relied on the blood test report is not sufficient to establish HMC's liability. To state a cause of action against HMC, Netes must allege all the elements of a medical negligence claim as to HMC specifically. The TAC does not allege HMC or its agents breached a duty while performing the blood test or generating the report.

---

[2] The TAC also alleges violations of regulations related to patient rights, admissions, transfers, and discharges. Netes does not meaningfully address those allegations on appeal, so we do not consider them. (See *Delta, supra*, 48 Cal.App.5th at p. 1075.)

Because breach of duty is a required element of a negligence claim, Netes's first two causes of action fail.

Netes's third cause of action—for "violation of privacy right, and . . . unauthorized disclosure of identifiable medical information"—also fails. The TAC alleges HMC violated the Confidentiality of Medical Information Act by disclosing Netes's medical information to Samaritan Hospice Care without authorization.[3] The Confidentiality of Medical Information Act generally prohibits medical providers from disclosing a patient's medical information "without first obtaining an authorization." (Civ. Code, § 56.10, subd. (a).) However, there are exceptions to the general rule. For example, a medical provider need not obtain authorization to disclose medical information to "providers of health care, health care service plans, contractors, or other health care professionals or facilities for purposes of diagnosis or treatment of the patient." (*Id*., subd. (c)(1).)

In its demurrer, HMC asserted the TAC alleges its disclosure to Samaritan Hospice Care was for the purpose of providing medical care. Therefore, HMC argued, it did not need authorization to disclose Netes's information and did not violate the Confidentiality of Medical Information Act. The trial court agreed, noting Netes did not address HMC's argument in opposition to the demurrer. Netes does not meaningfully address

---

[3]     The TAC also alleges HMC improperly disclosed Netes's medical information to "unidentified signatories" of her discharge documents. The TAC alleges one of the signatories was Netes's legal guardian, who would have had authority to authorize disclosure. (See Civ. Code, § 56.11, subd. (b)(3)(B).) Although not entirely clear, Netes seems to concede the only other signatory was an HMC nurse. Netes does not explain how this violated the Confidentiality of Medical Information Act.

10

the issue on appeal, either.  Accordingly, she has not shown the trial court erred by sustaining the demurrer on this ground. (See *Delta, supra*, 48 Cal.App.5th at p. 1075; *Bains, supra*, 172 Cal.App.4th at p. 455.)

Nor has Netes shown the trial court abused its discretion when it sustained the demurrer without leave to amend.  When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff."  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  The plaintiff can make the requisite showing for the first time on appeal.  (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

Netes does not meaningfully explain how she could amend her complaint to resolve the issues discussed above. Instead, she suggests she would add new allegations that HMC committed fraud—rather than negligence—by falsifying the blood test report, presenting a "false record of Acknowledgment for receipt of information for hospice treatment authorization . . . dated 1/20/2022," and "falsely claim[ing] legitimate records disclosure to non-existent hospice facility."  Netes's conclusory allegations do not meet the particularity requirement for fraud claims.  (See *Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 [fraud claims must be pleaded with particularity].)  Accordingly, they do not warrant granting her leave to amend her complaint.

The same is true of the various other theories of liability Netes has raised.  Netes has suggested HMC is liable for

rewarding Dr. El Asmar for referring her to HMC, failing to inform her that insurance would not cover her care, the theft of her property while hospitalized, requiring her to sign a release of information as a condition of admission, making a "de-facto referral to hospice," and enabling "improper induction to hospice." Netes does not clearly set out the factual and legal support for any of these theories. While we are mindful that Netes is representing herself, it is not our role to serve as " 'backup appellate counsel' " and make Netes's arguments for her. (*Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14; see *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546.)

## DISPOSITION

We dismiss Ella Netes's appeal of the order denying her motion for reconsideration.  We affirm the judgment.  HMC shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

HANASONO, J.